# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. CR415-191 |
| ) | |
| TYRONE ANWAN BROADNAX ) | |

## REPORT AND RECOMMENDATION

Indicted on gun and drug charges, defendant Tyrone Broadnax moves to suppress evidence derived from a police stop and search of his vehicle. Docs. 18, 32.[1]

## I. BACKGROUND

On July 22, 2015, Sergeant Corey Schaff of the Savannah-Chatham Metropolitan Police led an Undercover Narcotics Investigations Team ("the UNIT") in a multi-car surveillance of certain drug "hot spots" in Savannah, Georgia. While in one such zone off Tibet Avenue, he noted a bright blue Chevy Impala with tinted windows. Schaff remembered seeing that vehicle the previous day at another drug hot spot, a car wash

---

[1] He filed a deficient suppression motion (doc. 18) challenging the vehicle search that led to the gun and drug charges against him. *United States v. Broadnax*, 2016 WL 102197 at *1 (S.D. Ga. Jan. 8, 2016). After he re-filed it and thus cured the deficiency (doc. 32), the Court held an evidentiary hearing.

located at the intersection of 37th and Montgomery Streets in Savannah. Schaff requested a tag search, which revealed that the owner of the vehicle was Tyrone Broadnax, who was then on parole for armed robbery. The UNIT (Schaff in his vehicle, Detective Joseph Hood in his, and other officers in theirs) watched the Impala travel from the first hot spot to the 37th and Montgomery Street car wash. Along the way, Hood witnessed Broadnax's car make abrupt, unsignaled lane changes characteristic of a driver engaged in "counter-surveillance." From his surveillance position some 120 yards from the car wash, Hood, using binoculars, observed the driver of the Impala engage in what appeared to be a hand-to-hand drug transaction with some occupants of another vehicle.[2] Hood radioed this information to other members of the UNIT. When a marked police cruiser (unaware of the surveillance team's presence) pulled into a nearby gas station, the Impala drove off. The UNIT followed Broadnax from that intersection into an area West of Savannah but lost sight of his vehicle in heavy traffic.

Sgt. Schaff spotted the Impala again minutes later as it traveled in

---

[2] Det. Hood testified that, in the course of his duties as a drug investigator, he sees "many, many" such transactions every year.

2

afternoon rush-hour traffic on Ogeechee Road.  From his position about 100 feet behind the Impala, Schaff observed it make a sudden lane change to the right without signaling to other nearby vehicles.  Schaff radioed this information to a uniformed officer who happened to be in the vicinity and asked him to conduct a traffic stop.  That officer, Benjamin Ferrero, did so, and moments later "K-9" Officer Phillip Collard arrived at the scene and immediately got his drug-detection dog out of his vehicle.[3]

Officer Ferrero advised the driver of the Impala, defendant Broadnax, that he was stopped for failure to signal a lane change and asked him to step out of the car.  After some hesitation, Broadnax exited and followed Ferrero's instructions to move behind the Impala.  Upon conducting a brief patdown, Ferrero returned to his patrol car and began to run a license and criminal history check using his patrol car's on-board computer.  Meanwhile, Officer Collard had his dog, Toro, sniff around the car.  Toro alerted at the driver's door and at the front passenger door.  Collard then led Toro to sniff the rest of the car before he opened the front passenger door and let him sniff inside.  Within seconds, Toro

---

[3] Officer Collard testified that he had been shadowing the UNIT as it conducted its surveillance operations.

3

"nose-touch-alerted" to drugs in the car's center console. The police then hand-searched it and found cocaine.[4] Broadnax, arrested at the scene, incriminated himself.

## II. ANALYSIS

Attesting that he in fact did use his turn signal, Broadnax insists that there was no probable cause to stop him. Doc. 32-2 at 2. Plus, he insists in his prehearing affidavit, "[i]t took approximately 10 minutes from when [he] was first pulled over until the K-9 officer walked the dog around my vehicle." *Id.* Reminding that Georgia law requires use of a turn signal only when other cars are nearby, and asserting that, in any event, Toro was just not reliable enough,[5] defendant wants all the seized evidence suppressed as the poisonous fruit of an illegal stop and search. *Id.* at 2-9.

All of Broadnax's factual assertions are unsupported by the evidence, and his motion is baseless. The Court preliminarily notes

---

[4] The events during the traffic stop were captured on multiple cameras worn by the officers at the scene. Gov't Ex. 1 (DVD-R reflecting the video and audio recordings made by these various cameras).

[5] While Toro's September 29, 2015 certification reflects only an 85% reliability rate, Gov't Ex. 4 (doc. 23-1 at 6), the dog received a 95% reliability rating as of September 23, 2014 and September 26, 2013. Gov't Exs. 2, 3 (doc. 23-1 at 2, 4).

that a traffic stop is constitutional if it is either based on probable cause to believe a traffic violation has occurred or justified by reasonable suspicion to believe the motorist is engaged in criminal activity. *Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003); *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990); *United States v. Armstrong*, 2015 WL 2452901 at * 5 (S.D. Ga. May 21, 2015). Once a motorist is lawfully stopped for a traffic violation, the police do not transform the seizure into a "search" for Fourth Amendment purposes by having a drug-detection dog sniff around the vehicle. *City of Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000); *United States v. Holloman*, 113 F.3d 192, 194 (11th Cir. 1997). And a dog's 85%-95% reliability rating is well within accepted norms. *United States v. Smith*, 448 F. App'x 936, 939 (11th Cir. 2011) (district court did not clearly err in concluding that drug dog's alert on defendant's car was sufficiently reliable to furnish probable cause for a warrantless search of the car, despite dog's alleged 70% accuracy rate in the field); *see Florida v. Harris*, 133 S. Ct. 1050 (2013).

5

Equipped with the unrebutted testimony of the government's witnesses and these legal standards, the Court has no hesitation concluding that Broadnax's improper lane change, standing alone, legally supported the stop. A driver "violates O.C.G.A. § 40-6-123 when he makes a signal-less lane change while there are other cars travelling nearby." *United States v. Woods*, 385 F. App'x 914, 915 (11th Cir. 2010); *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008); *United States v. Frazier*, 2008 WL 5245876 at * 4 (S.D. Ga. Dec. 16, 2008). The Court credit's Sgt. Schaff's testimony that he witnessed Broadnax make an illegal lane change in violation of § 40-6-123.[6] The traffic stop, therefore, did not violate the Constitution.

With the investigatory stop fully justified, the K-9 sniff was too, for free-air dog sniffs are not searches under the Fourth Amendment. And Toro's positive alert, in turn, supported the search of Broadnax's vehicle. In that regard, the Court rejects defendant's challenge to the length of the

---

[6] Broadnax could have testified but elected not to. And while his affidavit to the contrary fetched him a hearing, it remained inadmissible hearsay, and thus he could not rely on it at the hearing. *United States v. Terry*, CR406-332, 2007 WL 496630 at * 4 (S.D. Ga. Feb. 12, 2007). Schaff's testimony thus went unrebutted. Nor is there any cause to doubt Schaff, Collard, and Ferrero, all of whom evinced clear memories of the events that day.

detention. He insists that the police unreasonably extended the traffic stop to bring in a drug dog.[7] Doc. 32 at 4-6. But the record refutes this contention. As the video reflects, there was, at most, an inconsequential delay between the stop and the dog's arrival. Further, Officer Ferrero had yet to complete the process of running the standard computer check of Broadnax's license and criminal history before the dog alerted to the presence of drugs in his vehicle. *See United States v. Purcell*, 236 F.3d 1274, 1278-79 (11th Cir. 2001) (in every traffic stop an officer may conduct a routine check of both the motorist's driver's license and his criminal history). The Eleventh Circuit has noted that where a traffic stop is lawful at its inception, "we doubt that a resultant seizure of no more than seventeen minutes can ever be unconstitutional on account of its duration: the duration is too short." *United States v. Hernandez*, 418 F.3d 1206, 1212 n. 7 (11th Cir. 2005). Here, the dog sniff occurred well

---

[7] Unreasonably prolonged detention during a traffic stop can invalidate a search. *Rodriguez v. United States*, ___ U.S. ___, 135 S. Ct. 1609, 1614 (2015) (the constitutional duration of police inquiries in the traffic-stop context is determined by each seizure's "mission"; if only a traffic violation justified the stop, the police cannot prolong it beyond what is necessary to address the traffic violation); *Illinois v. Caballes*, 543 U.S. 405, 407-08 (2005); *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999) (*citing Holoman.* 113 F.3d at 196).

short of five minutes into the stop. No impermissibly prolonged traffic stop is present in this case.[8] On this basis alone (*i.e.*, a valid traffic stop and probable cause arising from a drug-dog's alert on the vehicle during the course of that stop), Broadnax's suppression motion must be denied.

Additional grounds support this result. A member of the surveillance UNIT, experienced in the ways of street-level drug dealers, had earlier observed Broadnax engage in an apparent drug sale. Independent of any traffic violation, therefore, the officers had probable cause to stop and search Broadnax for evidence of illegal drug-dealing -- a point simply ignored in Broadnax's briefs and at the hearing.[9] The Court

---

[8] Defendant should have been aware of this prior to the hearing, for the government furnished him with a copy of the DVD containing the body-cam images of the K-9 officer, as well as the other camera recordings of the officers who converged at the scene moments after the traffic stop.

[9] He was reminded of this ground prior to the hearing, by the government's brief:

> officers noticed Defendant's car at a known drug distribution point on two consecutive days and (2) just minutes before the traffic stop, Detective Hood saw Defendant engage in an apparent hand-to-hand drug transaction after digging around the passenger cabin of the vehicle. These observations were communicated on a police radio channel monitored by Officer Collard who was later enlisted to stop Defendant's vehicle as it proceeded on Ogeechee Road. Because Officer Collard was entitled to rely on the observations of his fellow officers that were communicated to him, and because the officers' aggregate knowledge was sufficient to establish probable cause, Officer Collard had an independent basis to effectuate a lawful stop of Defendant's car.

heard unrebutted testimony (*i.e.*, that the police witnessed conduct typical of a drug transaction in a known, drug-dealing hot-spot) showing that the police reasonably believed Broadnax had been engaging in drug transactions and used his car to that end.

> [L]aw enforcement officers may search a readily mobile vehicle without a warrant if they have probable cause to believe that the vehicle contains evidence of a crime. *United States v. Ross*, 456 U.S. 798, 799, 102 S.Ct. 2157, 2160, 72 L.Ed.2d 572 (1982). In deciding whether probable cause exists to stop and search a vehicle, the inquiry is whether the totality of the circumstances indicate that "there is a fair probability that contraband or evidence of a crime will be found in the vehicle." *United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir.2006), *accord United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007). "[P]robable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *U.S. v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (quoting *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

*Armstrong*, 2015 WL 2452901 at * 4. Here, the totality of the circumstances revealed a fair probability that contraband would be found in Broadnax's vehicle. His suppression motion therefore should be denied on these additional grounds.

---

Doc. 23 at 9-10 (footnote added; cite omitted).

## III. CONCLUSION

Accordingly, Defendant Tyrone Broadnax's motion to suppress (doc. 18, *as amended,* doc. 32) should be **DENIED**.

**SO REPORTED AND RECOMMENDED,** this  3rd  day of March, 2016.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA